# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BANCROFT LIFE & CASUALTY ICC, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FFD RESOURCES II, LLC, ) | |
| ) | |
| Defendant. ) | Case No.: 4:11-cv-02384 |
| ) | |
| FFD RESOURCES II, LLC, and ) | |
| FFD VENTURES, LP ) | |
| ) | |
| Counterclaim Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BANCROFT LIFE & CASUALTY ICC, LTD., ) | |
| ) | |
| Counterclaim Defendant. ) | |

## DEFENDANT AND COUNTERCLAIM PLAINTIFF FFD RESOURCES II, LLC'S AND COUNTERCLAIM PLAINTIFF IN JOINDER FFD VENTURES, LP'S OPPOSITION TO COUNTERCLAIM-DEFENDANT'S MOTION TO DISMISS THE COUNTERCLAIMS

Defendant and Counterclaim Plaintiff FFD Resources II, LLC ("FFD II") and Counterclaim Plaintiff in Joinder FFD Ventures, LP ("FFD Ventures") (collectively, "FFD") hereby file their opposition to Plaintiff/Counterclaim Defendant Bancroft Life & Casualty ICC, Ltd.'s ("Bancroft") Motion to Dismiss the Counterclaims.

## I.     INTRODUCTION

This case arises from a series of closely intertwined transactions between Bancroft, a company purporting to sell a reputable insurance product, and FFD II and FFD Ventures, businesses that were induced to purchase that insurance product through false representations by Bancroft as to the nature of the investment.  As part of that business relationship, Bancroft would "loan back" to FFD "as an accommodation to its insured" 70 percent of the insurance premium payments remitted to Bancroft.  (*See* FFD's Counterclaims ("CCs") ¶¶ 5, 24; Bancroft Complaint ¶ 7).  Bancroft initiated this lawsuit to collect on five Promissory Notes from FFD II to Bancroft that were part of this insurance-premium "loan back" process.   As set forth in the nine counterclaims brought by FFD II and party-in-joinder FFD Ventures, these Notes did not arise in a vacuum -- they were part and parcel of the insurance program in which Bancroft, among other things, wrongfully and fraudulently induced FFD II and FFD Ventures to pay very high premium based on false representations that the premium would grow through conservatively-invested premium reserve accounts that would, at the end of the five-year program, "zero out" the loan principal, and Bancroft without justification refused to pay FFD II and FFD Ventures' covered insurance claim for losses incurred by FFD II and related FFD entities that Bancroft treated interchangeably despite their separate identities.

Bancroft now seeks dismissal of these counterclaims on three grounds:  (1) improper venue based on a forum selection clause in a Group Policy that allegedly requires disputes relating to Bancroft's insurance product be brought in the foreign nation of St. Lucia; (2) FFD's Count IX seeking a declaratory judgment on the insurance agreement and Promissory Notes should be dismissed as to FFD Ventures because there is no actual controversy; and (3) FFD's Counts I through VIII should be dismissed as to FFD II for failing to state a claim upon which

relief can be granted.  *See generally* Bancroft's Motion to Dismiss the Counterclaims (hereinafter "MTD").  Bancroft's arguments fail on all points.

As discussed below, the forum selection clause does not apply because (1) it was never incorporated into the parties' agreement; (2) Bancroft has waived its right to enforce the forum selection clause by bringing this suit against FFD II in this Court; and (3) the forum selection clause is unreasonable.  The Declaratory Judgment Count IX should not be dismissed as to FFD Ventures because an actual controversy exists regarding FFD Ventures' rights and Bancroft's obligations under the insurance program through which Bancroft issued the Notes to FFD II and billed FFD Ventures for interest on those same Notes.  While Bancroft is correct that all parties agree that FFD Ventures has no potential duty to pay on the Notes, that area of agreement is beside the point of the Declaratory Judgment count as to FFD Ventures, which seeks a declaration as to FFD Ventures' rights and Bancroft's duties under the insurance program of which the Notes are a part.  Finally, Bancroft's arguments to dismiss Counts I through VIII as to FFD II under Federal Rule of Civil Procedure 12(b)(6) are based on the incorrect premise that FFD II cannot state any claims relating to the insurance program.  Bancroft simply ignores the facts alleged throughout the Counterclaims showing that FFD II was insured under the insurance program through which Bancroft issued the Promissory Notes that Bancroft is trying to collect against FFD II.    For these reasons,  Bancroft's Motion to Dismiss the Counterclaims should be denied.

## II.    BACKGROUND OF THE DISPUTE

In 2005, Richard Clay ("Clay"), one of the individual owners of FFD Ventures, approached his personal attorney, Loren Cook ("Cook"), for advice regarding tax matters for the family of FFD entities.  (CCs ¶ 21).  That family included FFD Ventures, FFD II, FFD

Resources I, LLC ("FFD I"), FFD Resources III, LLC ("FFD II"), and FFD Resources IV, LLC ("FFD IV").  (*Id.* ¶ 15).  FFD is a closely held group of businesses, wherein a representation made to any of its representatives is in effect a representation as to all entities.  (*Id.* ¶ 7).   Cook, who was at all relevant times a commissioned Bancroft representative, recommended that Clay purchase Bancroft's "Premium Lite" insurance product.  (*Id.* ¶¶ 21, 22).  Cook explained that Premium Lite would allow Clay and/or FFD to defer tax exposure for the term of the policy while realizing gains on the initial program contribution.  (*Id.* ¶ 24).  Bancroft, through its agent Cook and through written materials Cook provided to Clay, represented to Clay that insured members' premium payments would be pooled with funds from other insureds.  (*Id.* ¶ 30).  Upon receiving a large, up-front premium payment, Bancroft would "loan back" 70% of the premium payment to the policyholder.  (*Id.* ¶ 31).  The remainder of the premium payment became the insured's Premium Reserve and was to be invested conservatively by Bancroft.  (*Id.* ¶¶ 31, 51).  Bancroft represented that at the end of the policy term, insureds could exit the program by offsetting any indebtedness to Bancroft against the cash value of their Premium Reserve, essentially "zeroing out" the business transactions.  (*Id.* ¶¶ 33, 34).

Based upon these representations, Clay filled out a Membership Application for Group Benefits (the "Application") in December 2005, listing FFD Ventures as the applicant, but also referencing other "additional insureds."  (*Id.* ¶ 38; Exhibit N to CCs).  Indeed, the Certificates of Insurance issued by Bancroft name FFD II, FFD I, and FFD III as additional insureds.  (CCs ¶ 41; Exhibit A to CCs).  The Application states that "Bancroft Life & Casualty, ltd. [sic] is a British Virgin Islands insurance company."  (Exhibit N § 3(C)).   The Application further discloses that "[t]he benefits of this coverage may only be enforced within the jurisdiction and under the laws of the British Virgin Islands."  (*See* Exhibit N § 3(G)(g)).  The Group Policy,

which included first the British Virgin Islands forum selection clause and later the St. Lucia forum selection clause, was never shown to FFD representatives.  (CCs ¶ 41).  Bancroft's inclusion of heavily redacted versions of the 2005, 2008, and 2010 Group Policies is the first time FFD has seen these policies.  (*See* Declaration of Richard D. Clay ("Clay Decl.") ¶ 5, attached as **Exhibit A**).  FFD was never informed that any forum selection clause in the Group Policy was amended in both 2008 and 2010.  (*Id.* ¶ 6).  The St. Lucia address for Bancroft on the 2009 Certificates of Insurance is the only information of any kind that FFD received relating to St. Lucia or Bancroft's move to that country.  (*Id.* ¶ 7).  FFD was never apprised of any forum selection clause choosing St. Lucia.  (*Id.*).

In a two-week period in December 2006, FFD II wired $2,209,500 in insurance premium payments to ABG, Bancroft's third-party administrator.  (*See* Exhibit C to CCs).  In that same two-week time frame, Bancroft issued the five Promissory Notes at issue here, totaling $1,546,650 -- loaning back to FFD exactly 70% of the amount of premium paid into the insurance program.  (*See* Promissory Notes, attached as Exhibits A-1 to A-5 to Bancroft's Complaint*; see also* Exhibit C to CCs at 1-2 (showing six separate premium payments from FFD II to ABG from December 15 to December 28, 2006)).  On at least two occasions, Bancroft invoiced FFD Ventures for interest on the loans to FFD II.  (*See* Exhibit D to CCs).

Throughout the relationship, FFD submitted five separate insurance claims for covered business losses to Bancroft in 2006, 2007, and 2009.  (CCs ¶ 56).  Bancroft paid them all.  (*Id.* ¶ 57).  The proceeds from one of these claims was even returned by Bancroft to be applied to a loan.  (*Id.* ¶ 57; Exhibit X to CCs).  In October 2010, FFD again submitted a claim under its Uncollectible Loans coverage for covered business losses of the various FFD entities, including FFD II, in the amount of $3,250,885.61, reaching the applicable coverage limit of $3,004,448.

(CCs ¶ 58).  Bancroft has wrongfully refused to pay this claim, despite FFD's submitting its 99-page collection log as proof of its losses and despite the fact that this claim was submitted using the same form and providing the same information as the prior claims that were paid by Bancroft.  (*Id.* ¶¶ 58-59).

In contravention of its representations to FFD that it would invest FFD's Premium Reserve funds conservatively, Bancroft also squandered FFD's money on high-risk investments, including mortgage-backed securities and an ill-advised land deal pioneered by G. Thomas Roberts of Bancroft's claims administrator ICMC.  (*Id.* ¶¶ 48-54).  Additionally, in 2008 Bancroft began to assess undisclosed, unjustified, and exorbitant extra fees and "retrospective premiums" on FFD.  (*Id.* ¶¶ 39, 46, 47, 72-76).  As a result of Bancroft's high-risk investments and undisclosed "fees," FFD's Premium Reserve account has now been depleted to $2,704,365.20, despite FFD's premium contributions of more than $6.6 million.  (*Id.* ¶ 78).  As a result, there is not enough money in the Premium Reserve account to offset and "zero out" FFD's indebtedness under the Notes, as Bancroft had represented.  On April 12, 2011, Bancroft brought the instant lawsuit to collect on the five Promissory Notes, and on August 10, 2011, FFD II and FFD Ventures submitted their Counterclaims.

### III.    ARGUMENT AND CITATION OF AUTHORITIES

**A.    The St. Lucia forum selection clause contained in the Group Policy is not enforceable against FFD.**

   1.    The forum selection clause was never incorporated into the Application -- the only document bearing FFD's signature.

As a threshold matter, the forum selection clause is unenforceable as to FFD because that clause was never incorporated into any document that FFD saw or signed.  Neither the

Membership Application for Group Benefits[1] (the only document signed by FFD) nor the Certificates of Insurance (the only insurance document FFD received) include a St. Lucia forum selection clause.

As this Court has recognized, a forum selection clause that is outside of the parties' agreement is enforceable only if the parties' agreement effectively incorporates it. *Valero Mktg. & Supply Co. v. Baldwin Contracting Co*., No. CIV A H-09-2957, 2010 WL 1068105, at *2 (S.D. Tex. Mar. 19, 2010). In *Valero*, similar to here, the parties signed one document, but the forum selection clause at issue was contained in another document that the defendant never saw or signed. *Id.* The Court held that it "first must determine whether Defendant agreed to the clause before considering whether it is *enforceable*." *Id.* (emphasis in original). Under these circumstances, the Court held, the forum selection clause was part of the parties' agreement only if the document they signed effectively incorporated it. *Id*. at *4. In Texas, "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed . . . plainly refers to another writing." *Id.* (quoting *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135 (Tex. 2004)). "Merely referencing another document, however, does not incorporate the *entire* document when the language used in the incorporation clause does not indicate the parties' intent to do so." *Id*. The *Valero* court found that the language in the parties' agreement only incorporated the other document for a limited purpose, which did not include the forum selection clause. The Court held the clause was therefore not incorporated into the parties' agreement, that the defendant had never agreed to the clause, and it was therefore unenforceable as to that party. *Id*. at *5.

---

[1] In June 2006, FFD also executed a "Supplement to Application." (*See* CCs ¶ 40). This document does not contain a forum selection clause, nor does it contain a reference to the Group Policy. (*See* Exhibit O to CCs).

Here, it is undisputed that the only document an FFD representative ever signed containing a disclosure as to forum selection was the Application.  (Exhibit N to CCs).  This Application was on Bancroft letterhead with an address in the British Virgin Islands.  (CCs ¶ 38).  As Bancroft has acknowledged, that document contained the following language: "The benefits of this coverage may only be enforced within the jurisdiction and under the laws of the British Virgin Islands."  (Exhibit N (the Application), §§ 2(e), 3(G)(g)).  Bancroft does not dispute that FFD was never shown the Group Policy or that an FFD representative never signed such Group Policy.  While the Application and the Certificates of Insurance provided to FFD reference the Group Policy, the Group Policy Bancroft attached to its MTD that was purportedly in effect in 2005 contains a forum selection clause placing jurisdiction in the British Virgin Islands, not St. Lucia.  (*See* 2005 Group Policy, attached as Exhibit 2 to Bancroft's MTD).

Any St. Lucia forum selection clause was not incorporated into the parties' agreement because the only forum selection clause ever disclosed to FFD provided for the British Virgin Islands -- never St. Lucia.  FFD never agreed to a St. Lucia forum selection clause, and any such clause is therefore not enforceable against FFD.

        2.        <u>Bancroft has waived its right to enforce the forum selection clause by filing this action in this Court.</u>

Bancroft has waived the purported St. Lucia forum selection clause in this case by suing FFD in this Court.  Bancroft has similarly waived the purported St. Lucia forum selection clause by filing suit to collect on other Premium Lite Notes in Nevada, Texas, and Georgia against additional parties insured by Bancroft under the same insurance program:

- *Bancroft Life & Cas. ICC, Ltd. v. FFD Resources IV, LLC*, Cause No 3:11-cv-00214-LRH-(WGC):  On March 23, 2011, Bancroft filed suit against another FFD entity in the United States District Court for the District of Nevada;

- *Bancroft Life & Cas. ICC, Ltd. v. FFD Resources III, LLC*, Case No. 4:11-cv-02382:  On April 12, 2011, Bancroft filed suit against another FFD entity in the Northern District of Georgia, which was transferred to the Southern District of Texas on the insured member's motion;

- *Bancroft Life & Cas. ICC, Ltd. v. Richard D. Clay*, Cause No. 1:11-cv-01505-SCJ:  On May 9, 2011, Bancroft filed suit in the Northern District of Georgia against Richard Clay, an individual with an ownership interest in the FFD entities and the alleged guarantor of the Promissory Note at issue in Bancroft's action against FFD Resources IV, LLC;

- *Bancroft Life & Cas. ICC, Ltd. v. Cesar Scolari*, Cause No. 2:10-cv-01475: In the United States District Court for the Western District of Pennsylvania, Bancroft filed a lawsuit on November 4, 2010 against one of its insureds.  (Complaint, Dkt. No. 1).  Following Defendant Scolari's motion to dismiss for lack of personal jurisdiction, Bancroft voluntarily dismissed its complaint on January 12, 2011 (Dkt. Nos. 4-6, 10);

- *Bancroft Life & Cas. ICC, Ltd. v. Cesar Scolari*, Cause No. 3:11-cv-05017: In the United States District Court for the Western District of Washington, Bancroft filed a lawsuit on January 6, 2011 against one of its insureds (Complaint, Dkt. No. 1);

- *Bancroft Life & Cas. ICC, Ltd. v. JLB Energy Grp. Int'l, LP*, Cause No. 4:11-cv-01390: In the United States District Court for the Southern District of Texas, Bancroft filed a lawsuit on April 12, 2011 against one of its insureds (Complaint, Dkt. No. 1);

- *Bancroft Life & Cas. ICC, Ltd. v. TMC Fin., LLC*, Case No. 1:11-cv-00903: In the United States District Court for the Eastern District of Virginia, Bancroft filed a lawsuit against one of its insureds (Complaint, Dkt. No. 1).

As these cases and its actions in this case show, Bancroft has repeatedly used the courts of the United States when it is convenient for Bancroft. But now, Bancroft asks this Court to shield it from FFD's Counterclaims based on a purported St. Lucia forum selection clause that Bancroft itself has not treated as binding. Bancroft thus has waived the purported St. Lucia forum selection clause in this case.

Waiver requires the intentional relinquishment of a known right. *See N. Am. Specialty Ins. Co. v. Debis Fin. Servs., Inc.,* 513 F.3d 466, 470 (5th Cir. 2007) ("Waiver is generally understood to be the intentional relinquishment of a known existing legal right. For waiver to occur, there must be an existing right, knowledge of its existence, and either an actual intention to relinquish that right or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."); *see also Electro-Mech. Corp. v. Riter Eng'g Co.*, No. 2:10-CV-975 TS, 2011 WL 2118704, at *2-4 (D. Utah May 25, 2011) (finding that party seeking to enforce forum selection clause had waived that right by bringing suit in a different court and only sought to enforce the clause after the defendant asserted counterclaims); *Bldg. Constr. Enters., Inc. v. Gary Meadows Constr. Co., Inc.*, No. 3:06-CV-00092 GTE, 2007 WL 1041003 (E.D. Ark. Apr. 4, 2007) (finding party had waived its rights under a forum selection clause by bringing a breach of contract action in a different forum than that required by the clause).

Bancroft's conduct of *initiating* suit in this case, in three other cases involving related entities or individuals, and at least three other similar, though unrelated, cases in courts across the United States is conduct squarely inconsistent with Bancroft's stated intent to enforce the alleged forum selection clause.

Bancroft may argue that that there is no waiver because the forum selection clause is in the insurance Group Policy which -- they may claim -- is completely separate from the loan transaction.  (*See* MTD 5-6).  This is incorrect.  The language of the clause in the 2010 Group Policy that Bancroft attaches to its MTD provides that:

> Any action at law or in equity ***based upon, arising from, or in any way related to the Policy*** or any Claim, including, but not limited to, benefits payable under the policy, coverage issues, termination issues and premium refunds must be brought in the Courts of St. Lucia.

(2010 Group Policy § XXVIII(D), attached as Exhibit 4 to Bancroft's MTD) (emphasis added).

By its plain language, the St. Lucia forum selection clause asserted by Bancroft applies broadly to encompass *any* action that is "*in any way related*" to the Policy.  *Id.* (emphasis added); *see Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,* 138 F.3d 160, 165 (5th Cir. 1998) (in a case involving "inextricably intertwined" agreements and setoffs against a Promissory Note, stating that when parties' arbitration clause uses the phrase "arising out of or in connection with or relating to" an agreement, they "intend the clause to reach all aspects of the relationship"); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 398 (1967) (recognizing as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising our of or relating to" the agreement).  That is precisely the case here.  As alleged in FFD's Counterclaims, the Promissory Notes that Bancroft has sued upon are inextricably tied to the insurance policy.  The loans were made to FFD II as part of a "loan back" of premium funds contributed by FFD Ventures and FFD II to Bancroft's Premium Lite insurance program.  (CCs ¶ 31).  Specifically, between December 15, 2006 and December 28, 2006, FFD II wired $2,209,50 in premium payments to ABG, Bancroft's third-party administrator.  (*See* Exhibit C to CCs).  In that same two-week time frame, Bancroft issued the five Promissory Notes at issue here, totaling $1,546,650 -- loaning back to FFD exactly 70% of the amount of premium paid into the

insurance program.   (*See* Promissory Notes, attached as Exhibits A-1 to A-5 to Bancroft's Complaint; *see also* Exhibit C to CCs.)   Those premium funds were to be placed in FFD's Reserve Account, and Bancroft represented to FFD representatives that those funds would "zero out" with the loan amounts when the insurance program ended.   (CCs ¶¶ 4-5, 24, 34). Additionally, in 2009, FFD submitted a claim for $1,379,175.00 and Bancroft's claim payment check was applied to its loan.   (*Id.* ¶ 57, Exhibit X to CCs).   Furthermore, Bancroft billed FFD Ventures, an insured under the Certificates of Insurance but not a party to the Promissory Notes, in October of 2008 and December of 2010 for interest on the Promissory Notes issued to FFD II. (*See* Exhibit D to CCs).   Under these facts, Bancroft's suit on the Promissory Notes in this Court clearly arises from and is related to the Group Policy.   Bancroft chose to bring suit in this Court, ignoring the clear directive of its own forum selection clause in doing so.   As such, Bancroft has intentionally relinquished and has waived its asserted right to enforce the forum selection clause against FFD.

It makes no difference that Bancroft initially sued FFD II in this Court on the Notes, while FFD II and FFD Ventures' Counterclaims also assert claims on the insurance policy as well as the Notes.   First, as discussed herein, the Notes are an integral part of the insurance program governed by the Group Policy.   Second, FFD II's Counterclaims are compulsory and were required to be brought in this case in the Texas forum chosen by Bancroft.   Under Federal Rule of Civil Procedure 13(a), a counterclaim is compulsory if it (1) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (2) does not require adding another party over whom the court cannot acquire jurisdiction.   FED. R. CIV. P. 13(a).   In the Fifth Circuit, courts ask four questions to determine whether a claim is compulsory.

(1) whether the issues of fact and law raised by the claim and counterclaim largely are the same;

(2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule;

(3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and

(4) whether there is any logical relationship between the claim and the counterclaim.

*Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85-86 (5th Cir. 1997). If *any* of these four questions results in an affirmative answer, then the counterclaim is compulsory. *Id.* In other words, if a counterclaim is "so related" to the claims within the original jurisdiction of the Court that they form part of the same case or controversy, then it is considered to be a compulsory counterclaim under Rule 13(a). If it is indeed compulsory, there is no need for an independent basis of jurisdiction. *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.* 874 F.2d 283, 291 (5th Cir. 1989) (stating "compulsory counterclaims fall within the court's ancillary jurisdiction and do not require an independent jurisdictional basis"); *Zurn Ind. Inc. v. Acton Constr. Co.,* 847 F.2d 234, 237 (5th Cir. 1988) (same); *see also 50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.,* No. SA-95-CA-159, 1997 WL 790739 (W.D. Tex. May 20, 1997) (holding that because counterclaims were compulsory, they should not be dismissed for lack of jurisdiction).

Here, it is clear that the Counterclaims FFD asserts arise out of the same transaction and/or occurrences as the claim on the Promissory Note brought by Bancroft. The facts demonstrate that these loans were part of a "loan back" process between FFD and Bancroft, inextricably linking the Notes and the insurance program. FFD's Counterclaims revolve around misrepresentations and breaches of contract related to the insurance claim and how those misrepresentations and breaches affect FFD II's obligation to repay the Notes. The issues of fact and law are the same and substantially the same evidence would be at play in both instances. Indeed, this Court found as much when it granted FFD's motion to join FFD Ventures   as

Counterclaim Plaintiff under much the same standard.  (*See* Sept. 19, 2011 Order at 1, Dkt. No. 33 (granting the motion in light of "Defendant's explanation of how FFD Venture[s], LP's claims arose out of the same transaction/occurrence/series of transactions or occurrences, and involve common questions of law or fact as the claims currently in this case")).  Because FFD's Counterclaims are compulsory under Rule 13(a), this Court need not find an independent jurisdictional basis in order to hear and adjudicate those claims.

As compulsory counterclaims, FFD's Counterclaims in this action cannot and should not be dismissed, even without a basis for independent jurisdiction.  It is well settled that failure to plead compulsory counterclaims bars that party from bringing a later independent action on those claims.  *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998) (citing *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1 (1974)).

3.     The forum selection clause is unreasonable.

Alternatively, even if this Court were to find that that the forum selection clause was incorporated into the parties' agreement and that Bancroft has not waived its right to enforce it, the forum selection clause is unenforceable because it is unreasonable.  Under Fifth Circuit law, courts may decline to enforce a forum selection clause that is "unreasonable."  *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 220 (5th Cir. 1998).   Unreasonableness is demonstrated by "a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the [party resisting the clause] of his day in court." *Afram Carriers, Inc. v. Moeykens,* 145 F.3d 298, 301 (5th Cir. 1998); *see also The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972) (first stating the test for unreasonableness).

The U.S. Supreme Court further clarified the test for unreasonableness of a forum selection clause in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991).   There, the Court noted that if the selected forum is a "remote alien forum," then "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause." *Id.* at 594.   Further, if the party resisting enforcement of the clause lacked "adequate notice" of the forum selection clause, then a court may decline to enforce it. *Id.* at 595.   Adequate notice is important, according to the Court, in part because it indicates that the party "presumably retained the option of rejecting the contract with impunity," and the Court's opinion emphasized that in the case before it the parties "conceded that they were given notice of the forum provision." *Id.*   The Court further noted that a forum selection clause should be set aside if it was the product of a "bad-faith motive," including when there is evidence that the particular forum was selected as a means of discouraging signatories from "pursuing legitimate claims" or evidence that the party seeking enforcement obtained the other party's accession to the forum clause by "fraud or overreaching." *Id.*   Here, the considerations explicitly laid out in *Carnival Cruise* direct a finding that this clause is unreasonable.

> a.   The forum selection clause is the result of fraud and/or overreaching.

The Court in *Carnival Cruise Lines* explained that two of the factors courts should look at when determining the reasonableness of a forum selection clause are whether adequate notice was given and whether the enforcing party has a bad-faith motive. *Carnival Cruise Lines,* 499 U.S. at 595.   Similarly, "[o]verreaching is that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties." *Haynsworth v. The Corporation,* 121 F.3d 956, 965 n.17 (5th Cir. 1997) (internal citation omitted).   Inclusion of the asserted forum selection clause here was the product

of fraud or overreaching because it was allegedly contained in a document that was never shown or agreed to by FFD.  Bancroft unilaterally changed the forum selection clause from one favoring the British Virgin Islands -- a forum disclosed to FFD in the Application -- to St. Lucia in the Group Policy.  FFD had no notice of this change, no meaningful opportunity to agree or reject the new choice of forum, and the circumstances clearly show Bancroft's bad-faith motive in surreptitiously rewriting the contract.

Bancroft did not give FFD any notice of the St. Lucia forum selection clause.  Bancroft argues that FFD should have known about the St. Lucia forum selection clause because (1) it was allegedly included in the Group Policy (which was never provided to FFD) and (2) the 2009 Certificates of Insurance indicated that Bancroft had *changed its business address* from the British Virgin Islands to St. Lucia.  (MTD at 4).  Plainly, an undisclosed change in the forum selection clause in the undisclosed terms of the Group Policy provided no notice to FFD of any new St. Lucia forum.  Likewise, FFD had no reason to believe that Bancroft's change of business address meant that there was also a new forum selection clause.  Bancroft's secret selection of a new and undisclosed foreign forum is unreasonable and unenforceable.

The forum selection clause also is fundamentally unfair because of Bancroft's bad-faith motive to discourage its American insureds from pursuing legitimate claims.   FFD was never provided a copy of the Group Policy and had never seen or agreed to a St. Lucia forum selection clause.  *Cf. The Bremen*, 407 U.S. at 13 n.14 (noting that the clause was "a vital part of the agreement," where "the consequences of the forum clause [figured] prominently in their calculations" and the forum selection clause "preced[ed] the date and parties' signatures" and "could hardly be ignored.").  Bancroft admits that it amended the clause numerous times with no input from or notice to its insured FFD.  (MTD at 4-5).  It is common sense that forcing its

American insureds to litigate their claims in an unfamiliar, foreign court far from home could and will discourage those parties from pursuing their legitimate claims.  For these reasons, it is clear the clause is unreasonable, because it is the product of fraud or overreaching on the part of Bancroft.

Bancroft wrongly contends that the "direct benefit estoppel" doctrine precludes FFD from raising the pertinent point that Bancroft never provided FFD with a copy of the Group Policy and FFD never signed that Policy.   None of the cases relied upon by Bancroft contains the same secret post-hoc change in forum that occurred here.  Only one of the cases cited by Bancroft involved a forum selection clause at all, and that case involved an enforceable forum clause.  *See Hellenic Inv. Fund, Inc. v. Det Nortske Veritas*, 464 F.3d 514, 520 (5th Cir. 2006) (finding the forum selection clause was enforceable because the party sought to be bound was on notice of the applicability of the rules containing the clause).    In other words, Bancroft's argument hinges on situations that did not involve agreeing to one forum in the beginning of their relationship, only to have one party unilaterally change the forum selection clause to an entirely different country.  While FFD, as an insured, clearly has a right to the benefits of its insurance policy, it is improper to hold FFD to a forum selection clause that it never agreed to and was secretly changed by Bancroft without notice.

          b.       *Litigating in St. Lucia would deprive FFD of its day in court.*

If this litigation is moved to St. Lucia, FFD will lose its right to a trial by jury.  St. Lucia, unlike the British Virgin Islands, is a Caribbean nation that does not recognize a right to jury trial in civil cases.  ROSE-MARIE BELLE ANTOINE, COMMONWEALTH CARIBBEAN LAW AND LEGAL SYSTEMS 377 (2d ed. 2008) (excerpt attached as **Exhibit B**).  The U.S. Supreme Court has spoken clearly on the importance of the right to a trial by jury:

> Fear of a Federal Government that had not guaranteed jury trials in civil cases, voiced first at the Philadelphia Convention in 1787 and regularly during the ratification debates, was the concern that precipitated the maelstrom over the need for a bill of rights in the United States Constitution.

*Chauffers, Teamsters, & Helpers v. Terry*, 494 U.S. 558, 580-81 (1990); *see also Reid v. Covert*, 354 US 1, 9-10 (1957) (compiling commentary on importance of trial by jury to American system of government).

FFD has specifically demanded a jury trial in this case.  (*See* FFD's Counterclaims, before "RELIEF REQUESTED").  Losing this right would deprive FFD of its day in court and this loss renders the forum selection clause unreasonable.  *See DHX, Inc. v. Allianz AGF MAT Ltd.*, No. CV 02-06397 PA, 2002 WL 31421952, at *1-2 (C.D. Cal. Oct. 17, 2002) (holding forum selection clause as void against public policy because it would force insured to litigate in England and so lose their opportunity for trial by jury, and accordingly denied the insurer's motion to dismiss)  (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 540 (1995) (stating that if contractual choice of law and choice of forum clauses operated together to effectively nullify a party's statutory rights, the agreement would not be upheld)).

Additionally, St. Lucia is a foreign country and is unquestionably a "remote alien forum."  *See Carnival Cruise Lines,* 499 U.S. at 594.  Forcing FFD to litigate in St. Lucia would pose a grave and serious inconvenience to FFD in terms of the expense and time spent traveling to that forum and securing local counsel.  It would be difficult and inconvenient for the relevant U.S. witnesses to travel outside the United States to give evidence.  Pursuant to *Carnival Cruise Lines*, St. Lucia's status as a remote alien forum means that greater weight should be placed on these serious inconveniences to FFD.  *See Sudduth v. Occidental Peruana, Inc*., 70 F. Supp. 2d 691, 695 (E.D. Tex. 1999) (finding forum selection clause unreasonable where the Plaintiffs

would "for all practical purposes be deprived of their day in court" because of the grave inconvenience or unfairness of trying the case in Peru).

The fact that other courts have upheld the forum selection clause in different circumstances is a red herring. In *Robert Kwok & Associates, Ltd. LLP v. Bancroft Life & Casualty ICC, Ltd*., Cause No. 2011-25680 (District Court of Harris County, Texas), the insured, Kwok, was the one who initiated the proceedings against Bancroft in Texas state court. This is different from our case where Bancroft filed its petition in this Court against FFD II, and filed three other cases involving the FFD entities before American courts. Here, FFD responded with its legitimate and compulsory counterclaims against Bancroft in the forum Bancroft selected. In doing so, Bancroft has waived its right to enforce the forum selection clause. (*See supra*, Section III.A.2. on waiver).

Bancroft's citation to *Sea Czar v. Bancroft Life & Casualty ICC, Ltd*, Case No. 8:11-cv-00068 (C.D. Cal. filed May 5, 2011) is disingenuous. The facts in *Sea Czar* are markedly different from this case. As acknowledged by Bancroft, *Sea Czar* involved a completely different kind of agreement and a different form of transaction than the insurance policy and Promissory Notes here. Moreover, in *Sea Czar*, the party opposing enforcement of the forum selection clause both *saw and signed* the agreement containing the forum selection clause. (*See* Order attached as Exhibit 15 to Bancroft's MTD). In other words, the party sought to be charged was fully aware of the clause and had the opportunity to negotiate it. Indeed, the Central District of California wrote that: "[E]ven if Defendant did attempt intentionally and unilaterally to omit page 4 [the page containing the forum selection clause] from the Agreement by sending to Plaintiff a signed copy of the Agreement without page 4, such amendment would be void because it was not in writing and was not signed by both parties." (*See id*.) The *Sea*

*Czar* Court's language seems to acknowledge that under these circumstances, enforcement would indeed by unreasonable.

> c.     *The clause contravenes the public policy of the state of Texas.*

A forum selection clause is unreasonable if it violates a strong public policy.  The state of Texas has a significant public policy interest in regulating insurance and protecting its citizens from sham insurance products.   That public policy is expressed in the Texas Insurance Code:

> (a)     It is a state concern that many residents of this state hold insurance policies issued by persons or insurers who are not authorized  to do insurance business in this state and who are not qualified as eligible surplus lines insurers under Chapter 981.  These residents face often insurmountable obstacles in asserting legal rights under the policies in foreign forums under unfamiliar laws and rules of practice. . . .

> (c)     The purpose of this chapter is to subject certain insurers and persons to the jurisdiction of . . . the courts of this state in suits by or on behalf of the state or an insured or beneficiary under an insurance contract.

Tex. Ins. Code § 101.001.

Bancroft held itself out as being able to sell insurance in Texas by, in fact, selling, executing, and purporting to issue insurance to FFD in Texas.  (CCs ¶ 44).  Bancroft did not disclose that it had not registered with the State of Texas to conduct the business of insurance.  (*Id.; see* also Exhibit Q to CCs).  It likewise did not disclose that Bancroft's agent and designee ABG was not registered with the Texas Department of Insurance or that its agent and designee Mr. Cook was not registered as an insurance agent.  (*Id; see also* Exhibits P and R to CCs).  Despite this legislative pronouncement of public policy, Bancroft nevertheless asks this Court to enforce a forum selection clause that would trigger exactly the public policy concerns cited by the Texas Legislature in keeping such disputes within this state.  Such a request is unreasonable and renders the forum selection clause unenforceable.

**B.   FFD Ventures' Declaratory Judgment Count is Valid Because Actual Controversy Exists As to FFD Ventures' Rights and Bancroft's Duties Under the Insurance Policy through which the Notes were Issued.**

Bancroft contends that Count IX should be dismissed as to FFD Ventures because there is no actual controversy between Bancroft and FFD Ventures as to the Promissory Notes and, therefore, no subject-matter jurisdiction for this Court.  (MTD at 10-12).  Declaratory judgment jurisdiction exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)*; see also Venator Grp. Specialty, Inc. v. Matthew/Muniot Family, LLC*, 322 F.3d 835, 838 (5th Cir. 2003) (reversing a district court's finding that petitioner's claim was not yet ripe and holding petitioner's allegations were sufficient to survive motion to dismiss).  Sufficient "immediacy and reality" exists where there is: (1) an injury-in-fact, [*i.e.*], a harm that is "concrete" and actual or imminent, not "conjectural" or "hypothetical," (2) that is "fairly traceable" to the defendant's conduct, and (3) redressable by a favorable decision.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998).

On a motion to dismiss, the court must accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party.  *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989).  Accepted as true, the allegations set forth in FFD's Counterclaims are sufficient to establish a case or controversy ripe for adjudication between FFD Ventures and Bancroft.  In addition, FFD has submitted evidence that confirms the complaint allegations and firmly establishes that there is a real and immediate controversy between FFD Ventures and Bancroft.

First, FFD's Count IX seeks a declaratory judgment as to the parties' respective rights under the insurance agreements *and* the Promissory Notes.  (CCs ¶¶ 127-129). While it is undisputed that FFD Ventures has no potential duty to pay on the Notes, it is equally clear that FFD Ventures' rights and Bancroft's duties under the insurance program, of which the Notes are a part, is in controversy.  As explained in this motion and in FFD's Counterclaims, the Notes and the insurance agreement are tied together through the parties' course of dealing.  The FFD entities, including FFD II and FFD Ventures, paid premium to Bancroft on the Premium Lite insurance product.  (*Id.* ¶¶ 4, 6).  Bancroft would then "loan back" 70% of that amount to FFD II, as evidenced by the Promissory Notes.  (*Id.* ¶ 31).  Bancroft would bill FFD Ventures for the interest on this and other loans it made to the FFD Resources entities.  (*Id.* ¶ 6; *see also* Exhibit D to CCs).  Bancroft explained to representatives of FFD that at the end of the program any amount FFD owed to Bancroft would be offset and "zeroed out" against the premium paid into its Premium Reserve account.  (CCs ¶¶ 5-8, 34).

Bancroft has now sued to enforce these Notes and FFD has asserted its numerous Counterclaims in order to tell the full story of Bancroft's misbehavior toward FFD.  Bancroft wants immediate payment of these Promissory Notes, and FFD seeks a declaratory judgment that because of money Bancroft owes to both FFD II and to FFD Ventures, FFD does not rightfully owe any amount under the Notes.  FFD Ventures' part in these instances is directly relevant to the "set off" owed FFD against the Notes.  The harm to FFD Ventures is actual, concrete, and imminent; Bancroft's conduct caused this potential harm; and a favorable result in this action would redress FFD Ventures' grievances by setting off the amounts owed to it and FFD II against the amounts Bancroft claims FFD II owes on the Notes.  For these reasons, there is an

actual controversy concerning FFD Ventures' rights on the Notes sufficient to support the declaratory judgment counterclaim.

### C.  FFD's Counterclaims state a claim against Bancroft and survive Rule 12(b)(6) scrutiny.

Bancroft argues that FFD's Counts I through VIII should be dismissed as to FFD II under Rule 12(b)(6) for failure to state a claim because these counterclaims relate to the insurance agreement, not to the Notes.  (MTD at 12-17).  This argument fails because it ignores two fundamental facts:  (1) FFD II is explicitly listed as an insured on the Certificates of Insurance and (2) Bancroft treated FFD II and FFD Ventures interchangeably, failing to distinguish between the funds flowing between the three entities, and the insurance agreement and Promissory Notes are inextricably intertwined.

### 1.  Applicable Standard of Review

As a threshold matter, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted."  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).  Bancroft argues that FFD's Counts I through VIII  fail to meet the pleading requirements mandated by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and Federal Rule of Civil Procedure 12(b)(6).  (MTD at 12-17).  *Twombly* does not require the type of allegations that Bancroft seems to think it does, however.  The Supreme Court made very clear that its decision in *Twombly* did not create a heightened pleading standard, and did not create a requirement of detailed, specific pleadings.  *Twombly*, 550 U.S. at 570.  *Twombly* holds that to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  *Twombly* thus sets forth a "plausibility" standard for complaints at the motion to dismiss stage, and retires the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41 (1957).  *Twombly*, 550 U.S. at 562-63.

In clarifying the standard for stating a claim, *Twombly* also reaffirmed several key principles for courts analyzing motions to dismiss to follow.

First, under *Twombly,* pleadings in federal court need only comply with Rule 8. *Udoeqa v. Plus4 Credit Union,* No. CIV A H-08-3054, 2009 WL 1856055, at *2 (S.D. Tex. June 29, 2009). That requirement is satisfied by a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.; see also Iqbal,* 129 S. Ct. at 1949 ("As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require 'detailed factual allegations'") (internal citations omitted). As explained by the *Iqbal* Court, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

Second, after *Twombly*, the law remains that when considering a Rule 12(b)(6) motion, "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Interspan Distr. Corp. v. Liberty Ins. Underwriters, Inc*., No. CIV A H-07-1078, 2008 WL 905354, at *7 (S.D. Tex. Mar. 31, 2008); *Iqbal*, 129 S. Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Moreover, courts must continue to liberally construe the complaint in favor of the plaintiff. *Xerox Corp.*, 888 F.2d at 350; *see also Duke Energy Int'l, LLC v. Napoli*, 748 F. Supp. 2d 656, 665 (S.D. Tex. 2010) (explaining that the "Supreme Court has explained that in considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true.").

Finally, *Twombly* did not purport to amend the Federal Rules or to suggest that a plaintiff must set forth every specific fact it will ultimately use to prove its claims. *See Twombly*, 550 U.S. at 570 (a plaintiff need only nudge its claims "across the line from conceivable to plausible"); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007) (stating that the "inquiry focuses on the allegations in the pleadings" and not on whether the "plaintiff actually has sufficient evidence to succeed on the merits"). A complaint must simply allege "enough factual matter (taken as true) to raise a reasonable hope or expectation that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). FFD's Counterclaims easily meet the pleading requirements of *Twombly* and the Federal Rules, and the Court should therefore deny Bancroft's motion to dismiss.

      2.    <u>FFD's Counterclaims Meet the Pleading Standard Set Forth in *Twombly.*</u>

The Counterclaims contain more than enough factual allegations to give Bancroft notice of the basis for FFD's claims, which is all that *Twombly* requires. *See Twombly*, 550 U.S. at 556 n.3, 564 n.10. In making its Rule 12(b)(6) argument, Bancroft is trying to persuade the Court to look at the facts in isolation, ignoring the larger picture and glossing over Bancroft's own sloppy treatment of these entities. Bancroft treated FFD II and FFD Ventures interchangeably. Bancroft intermingled premium, fees, interest, and loan proceeds in one big pot, yet now Bancroft seeks to ignore this fact in order to deny FFD II its right to assert counterclaims addressing the transaction as a whole. But Bancroft's claims against FFD II on the Promissory Notes and FFD II and FFD Ventures' Counterclaims on the insurance agreement are part and parcel of the same transaction. As such, the facts pled in FFD's Counterclaims state a claim against Bancroft with respect to FFD II.

a.      *FFD's Count I meets the applicable pleading standard.*

Count I asserts that Bancroft breached the insurance agreement by wrongfully denying FFD's nearly $3 million claim for insurance benefits. (CCs ¶¶ 82-89). Bancroft tries to distract this Court by referring to other entities (FFD IV and Clay), but the undisputed facts are that FFD II is listed as an insured on the Certificates of Insurance. (*See* Exhibit A to CCs). FFD Ventures, the "Certificate Holder," is also the 100% owner of FFD II. (CCs ¶ 15). Bancroft erroneously contends that "there are no specific factual allegations tying FFD2 to the subject Count 1 insurance claim." (MTD at 13). To begin, what Bancroft wants -- "specific factual allegations" -- are not required under *Twombly*. (*See* MTD at 13, 14). Furthermore, this is simply untrue. FFD's Counterclaims allege that FFD II paid premium to Bancroft and that the losses at issue in the $3 million insurance claim *included losses incurred by FFD II*. (CCs ¶¶ 6, 58; *see also* Exhibit C to CCs). FFD also alleged that, while the October 25, 2010 claim form lists only FFD Ventures, it was submitted for losses incurred by FFD II and other FFD entities and that FFD had successfully used this same claim submission form before. (*Id.* ¶¶ 55-58). Additionally, in 2009, FFD submitted a claim for $1,379,175.00 and Bancroft's insurance-claim payment check was applied to its loan -- clearly showing that the loans and insurance claims were intertwined in the overall insurance transaction. (*Id.* ¶ 57, Exhibit X to CCs). Taken as true, these allegations entitle FFD II to relief and so meets *Twombly*'s pleading standard.

b.      *FFD II does have a right to the insurance premium reserves and Counts II, III, and V through VII are adequately pled.*

Bancroft argues that five of FFD's Counterclaims should be dismissed because they depend upon FFD II's right to a return of the insurance premium reserves. Those Counterclaims are:

- Count II: Bancroft's breach of the insurance agreement by its failure to return unused premium reserves plus investment earnings;

- Count III:  Conversion;

- Count V: Breach of Fiduciary Duty;

- Count VI: Unjust Enrichment;

- Count VII: Demand for an Accounting.

Bancroft argues that "any duty to return the insurance premium reserves was due, if at all, to the Certificate Holder, Ventures, not to FFD II."  (MTD at 14).  Bancroft's attempt to paint FFD Ventures as the sole entity entitled to a return of the premium reserves is unavailing.  It is well established that "additional insured" parties are entitled to the same coverage as the named insured.  *See, e.g., Travelers Prop. Cas. Co. v. Liberty Mut. Ins. Co.,* 444 F.3d 217, 219 (4th Cir. 2006) (recognizing that an insurer owes to an additional insured under the policy an independent contractual obligation to provide coverage); *Wyner v. N. Am. Specialty Ins. Co.*, 78 F.3d 752, 756 (1st Cir. 1996) ("The purpose of provisions to add insureds is to extend the policy coverage to others . . . not to change the nature of the coverage.") (internal citations and quotations omitted); *Carolina Cas. Ins. Co. v. Underwriters Ins. Co.*, 569 F.2d 304, 314 (5th Cir. 1978) (recognizing that additional insureds are entitled to the same protections as the named insured); *W. Am. Ins. Co. v. Lindepuu,* 128 F. Supp. 2d 220, 232 (E.D. Pa. 2000) (noting that additional insured subject to same rights and obligations under insurance policy as named insured); *Liberty Mut. Ins. Co. v Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C. Cir. 1996) (same).  Therefore, the right to a return of premiums that Bancroft admits is due to FFD Ventures as the primary policy holder (*see* MTD at 15), is a right also afforded to FFD II as an additional insured.

Bancroft's argument also is flawed because it presupposes that only FFD Ventures paid premium and only FFD Ventures was in fact an insured of Bancroft.   In reality, Bancroft issued Certificates of Insurance showing FFD II as an additional insured and Bancroft treated FFD II as an insured.  Bancroft accepted premium payments from FFD II, provided the loans at issue "as an accommodation to its insured," and FFD II submitted its losses for coverage to Bancroft as part of the October 25, 2010 claim submission.  (CCs ¶ 6, 57, 58; Bancroft Complaint ¶ 7). Indeed, FFD II wired $2,209,500 in premium payments to ABG, Bancroft's claims administrator, which payment was part of the "loan back" process involving the five Promissory Notes at issue here. (*See* Exhibit C to CCs).  FFD II clearly has a claim regarding the premium reserves that it paid.

Bancroft argues that because FFD II was not a signatory to the Application for Benefits and was not listed on the Quarterly Reports provided by Bancroft, it is not insured and cannot pursue claims based on the insurance policy.  This ignores that the Application included an Exhibit that listed additional insured companies (*see* Exhibit N to CCs, at 4), and the Certificates of Insurance accordingly show that FFD II is an "additional insured."  (*See* Exhibit A to CCs). As FFD Ventures submitted the Application on behalf of itself and the "additional insured" companies including FFD II, and FFD II is an "additional insured" on the Certificates of Insurance, FFD II clearly was included in the application and was subsequently insured by Bancroft.  The fact that Bancroft did not specifically list FFD II on the Quarterly Reports it sent to FFD Ventures indicates nothing except Bancroft's practice of inaccurately treating the FFD entities interchangeably.  In fact, the Quarterly Report includes funds contributed by several FFD entities, including FFD II.  (CCs ¶¶ 6, 11, 71, 78).

Bancroft claims that unjust enrichment is not recognized under Texas law, but the very case Bancroft relies on for support belies this.  As explained by this Court, a claim for unjust enrichment may properly be pleaded in addition to and/or as an alternative to a breach of contract claim because Federal Rule of Civil Procedure 8 allows parties to plead as many separate claims as that party has, regardless of consistency.  *Baisden v. I'm Ready Prods., Inc*., 2008 WL 2118170, at *10 (S.D. Tex. May 16, 2008); *see also Waller v. DB3 Holdings, Inc.,* 2008 WL 373155, *5 (N.D. Tex. Feb. 12, 2008) (acknowledging that since "it is possible that the contracts will later be held invalid . . . [i]t would . . . be premature to dismiss the unjust enrichment claim as being foreclosed by existing contracts").  The *Baisden* court went on to hold that that plaintiff's claim for unjust enrichment was not factually sufficient to state a claim under Texas law.  Here, FFD pleads its unjust enrichment counterclaim in addition to and as an alternative to its breach of contract claim, as allowed under Rule 8.

In sum, FFD has pled facts that are sufficient on their face to show that FFD II claims an interest in the premium reserves and so Bancroft's attempt to dismiss Counts II, III, and V through VII should be denied.

c.      *FFD's Counts IV and VIII meet the applicable pleading standard.*

Bancroft argues that Count IV, where FFD alleges that is was fraudulently induced to purchase Bancroft's insurance product and contribute significant premiums, and Count VIII, where FFD seeks rescission of all agreements between Bancroft and FFD, fail because FFD II did not purchase the insurance.  However, this ignores the undisputed fact that FFD II is listed as an additional insured on the Certificates of Insurance, that FFD II paid premium to Bancroft, and its losses were part of the insurance claim submitted to Bancroft on October 25, 2010.  (CCs ¶¶ 6, 58; Exhibit A to CCs).  Additionally, the same people were at the helm of both FFD II and

FFD Ventures -- a fraudulent representation to one was a fraudulent representation as to all.  (*Id.* ¶ 7).  These common misrepresentations led Clay to fill out the Application for Benefits not just for FFD Ventures, but also for the additional insured companies contemplated on the face of the Application and in fact included in every Certificate of Insurance Bancroft issued to FFD.  (*See* Exhibits A and N to CCs.)  FFD has thus pled sufficient facts to show that FFD II is entitled to pursue its claims for fraudulent inducement and rescission.

## IV.    CONCLUSION

For the foregoing reasons, FFD II and FFD Ventures respectfully request that this Court deny Bancroft's motion to dismiss.

Dated: This 11th day of November, 2011.

Respectfully submitted,


*/s/ Jeremiah J. Anderson*
Jeremiah J. Anderson
Texas Bar No. 24040432
King & Spalding LLP
1100 Louisiana, Suite 4000
Houston, TX 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Attorneys for Defendant / Counterclaim Plaintiff FFD Resources II, LLC, and for Counterclaim Plaintiff in Joinder, FFD Ventures, LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of November, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and served a copy of the same via the CM/ECF system, or via U.S. Mail and/or electronic mail on the following attorneys of record:

> Andrew M. Edison
> EDISON, MCDOWELL & HETHERINGTON
> Phoenix Tower
> 3200 Southwest Freeway, Suite 2100
> Houston, Texas 77027
> Andrew.Edison@emhllp.com

> Kip Schwartz
> C. Dennis Southard IV
> THOMPSON HINE LLP
> 1920 N Street, Suite 800
> Washington, DC 20036
> Kip.Schwartz@ThompsonHine.com
> Dennis.Southard@ThompsonHine.com

> */s/  Jeremiah J. Anderson*
> Jeremiah J. Anderson